UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | | |
|---|---|---|
| R. ALEXANDER ACOSTA, | ) | CIVIL ACTION NO. |
| SECRETARY OF LABOR, | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF LABOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| XCEL COMMUNICATIONS OF SOUTH | ) | |
| ALABAMA, INC. d/b/a METRO PCS, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM IN SUPPORT OF PETITION FOR ENFORCEMENT OF ADMINISTRATIVE SUBPOENA *DUCES TECUM*

Petitioner R. Alexander Acosta, the Secretary of Labor, United States Department of Labor (hereinafter "the Secretary"), brings this action to compel Xcel Communications of South Alabama, Inc. d/b/a Metro PCS (hereinafter "Respondent") to comply with an Administrative Subpoena *Duces Tecum* (hereinafter "the Subpoena") issued to Respondent by the Regional Administrator of the Wage and Hour Division, Region IV, of the United States Department of Labor (hereinafter "WHD") and served on Respondent on May 30, 2018. The Subpoena was issued in connection with an investigation conducted pursuant to Section 9 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201

*et seq*. (hereinafter "the Act" or "FLSA").  The Court has jurisdiction over this Petition pursuant to Section 9 of the Act, 29 U.S.C. § 209, 28 U.S.C. §§ 1331 and 1345.

The Secretary submits this Memorandum of Law in support of the Secretary's Petition to compel Respondent to produce documents that are relevant and necessary to the Secretary's investigation of Respondent under the Act. Respondent's sustained failure to provide the documents is obstructing the Secretary's proper exercise of his lawful authority and responsibility to enforce and administer the provisions of the Act.  Because the Subpoena seeks documents relevant to the Secretary's lawful investigation, the Petition should be granted.

**I.    FACTS**

Respondent Xcel Communications of South Alabama, Inc. d/b/a Metro PCS is an Alabama corporation with a principal place of business location at 2206 Airport Boulevard, Suite H, Mobile, Alabama 36606 in Mobile County. Declaration of Investigator Anthony Jacobs (hereinafter "Jacobs Dec.") ¶ 4; Declaration of Assistant District Director Patricia Chambers ("hereinafter "Chambers Dec.") ¶ 3; Declaration of Investigator Monetta Roberts (hereinafter "Roberts Dec.") ¶4.   In February 2018, WHD's Mobile District Office opened an investigation of five Metro PCS Mobile locations to determine coverage under and compliance with the Act.  Chambers Dec. ¶3.   The Metro PCS locations under

investigation are: Metro PCS – Chickasaw, 101 North Craft Highway, Chickasaw, AL 36611 ("Chickasaw location"); Metro PCS – Theodore, 7325 Theodore Dawes Road, Theodore AL 36582 ("Theodore location"); Metro PCS – Daphne, 28825 U.S. Hwy 98, Daphne, AL 36526; PCS Mobile – Pleasant Valley, 2262 Pleasant Valley Road, Mobile, AL, 36606 ("Pleasant Valley"); and PCS Mobile – St. Stephens Road, 3305 St. Stephens Road, Mobile, AL 36612 ("St. Stephens"). Chambers Dec. ¶ 5.  During the course of its investigation of these five locations, WHD determined that the locations were owned and operated by Respondent. Roberts Dec. ¶¶ 3, 7.  WHD administers and enforces the provisions of the Act, which establishes minimum wage, overtime pay, recordkeeping, and youth employment standards affecting full-time and part-time workers in the private sector and Federal, State and local governments.  *See* 29 U.S.C. §§ 206, 207, 211(c), and 212.  In carrying out its enforcement responsibilities, WHD conducts a wide range of activities, including civil investigations, to determine whether the provisions of the Act have been violated.  29 U.S.C. § 211(a).

On February 22, 2018, Wage and Hour Investigator Anthony Jacobs ("WHI Jacobs") sent a letter ("February 22 letter") to Respondent's president and owner Nazy Gharib via electronic mail to metropcsmobile@gmail.com.  Jacobs Dec. ¶ 5. This letter explained that the Secretary would be conducting an investigation of the Pleasant Valley and St. Stephens locations to determine Respondent's compliance

with the Fair Labor Standards Act.  *See* letter attached as Exhibit B.  The letter informed Respondent that an initial conference would be held on February 28, 2018 at 10:00 am and included a checklist of documents often requested during the course of investigation.  This checklist included documents showing articles of incorporation, documents identifying gross annual dollar volume of sales, documents identifying all individuals who performed work for Respondent with hourly rates and salary and relevant payroll and time records from February 2016 to February 2018.  The letter also instructed Respondent to contact WHI Jacobs if Respondent had any questions.

On February 27, 2018, Respondent's attorney Greg Yaghmai contacted the Mobile District Office concerning this investigation.  ADD Chambers discussed the investigation with Mr. Yaghmai.  Chambers Dec. ¶ 7.  Mr. Yaghmai informed ADD Chambers that Respondent would not produce any records or allow the WHIs on Respondent's premises to conduct any interviews of employees.  Chambers Dec. ¶ 7. Later that day, Mr. Yaghmai sent an email to ADD Chambers at chambers.patricia@dol.gov.  Chambers Dec. ¶ 9.  His email stated that "there will not be any interviews of employees tomorrow" because Respondent had not received "any initial documentation" and that "there was just a phone call from someone purporting to be an investigator for the Federal Dept. of Labor."  *Id.*

4

On February 28, 2018, WHI Jacobs called Mr. Yaghmai to discuss this investigation.  Jacobs Dec. ¶ 7.  Mr. Yaghmai informed WHI Jacobs that Respondent would not produce any documents.  *Id.*  WHI Jacobs notified Mr. Yaghmai that the Wage and Hour Division may issue an administrative subpoena to compel the production of necessary documents if they were not voluntarily produced.  *Id.*

On March 1, 2018, WHI Jacobs sent a letter to Mr. Yaghmai at his email address greg@yaglaw.net.  *See* letter attached as Exhibit C.  The letter informed Respondent that an initial conference would be held on March 7, 2018 at 10:00 am concerning the investigations of the Pleasant Valley and St. Stephens locations and included a checklist of documents often requested during the course of investigation.  Jacobs Dec. ¶8.  This checklist was identical to the checklist sent on February 22, 2018 and included documents showing articles of incorporation, documents identifying gross annual dollar volume of sales, documents identifying all individuals who performed work for Respondent with hourly rates and salary and relevant payroll and time records from February 2016 to February 2018.  The letter also instructed Respondent to contact WHI Jacobs if Respondent had any questions.  *Id.*

On March 7, 2018, WHI Jacobs called Mr. Yaghmai to discuss the scheduling of an initial conference concerning this investigation.  Mr. Yaghmai

stated that Respondent would not appear for any initial conference. Jacobs Dec. ¶9. On March 9, 2018, after learning that Respondent did not appear for the March 7 appointment, ADD Chambers sent a letter ("March 9 letter") to Respondent via certified mail to Mr. Yaghmai. Chambers Dec. ¶10. *See* March 9 letter attached as Exhibit D. The March 9 letter required Respondent to produce documents necessary for the Wage and Hour investigations of Pleasant Valley and St. Stephens Road locations to the Wage and Hour Mobile District Office on or before 4:00 pm on March 15, 2018. Chambers Dec. ¶10. Specifically, the March 9 letter required Respondent to produce documents concerning Respondent's corporate ownership, annual dollar volume of sales, employee contact information, and payroll information. *Id.* The March 9 letter also informed Respondent that the letter was "the final written notice to submit the requested information" and that failure to respond may result in the issuance of a subpoena. *Id.* On March 13, 2018, ADD Chambers received an email from Mr. Yaghmai confirming receipt of the March 9 letter. However, Respondent did not provide any of the requested information. Chambers Dec. ¶11.

On March 21, 2018, WHI Roberts visited the PCS Mobile location at 28825 U.S. Hwy 98, Daphne, AL 36526. WHI Roberts gave the manager a letter which explained that the Secretary would be conducting an investigation of Respondent to determine Respondent's compliance with the Fair Labor Standards Act. *See*

letter attached as Exhibit F.  The letter informed Respondent that an initial conference would be held on March 29, 2018 and listed documents to produce at the initial conference, including documents showing articles of incorporation, documents identifying gross annual dollar volume of sales, documents identifying all individuals who performed work for Respondent with hourly rates and salary and relevant payroll and time records from March 2016 to March 2018.  The manager gave her the name and phone number of Respondent's owner and told her that the owner worked at 3766 Airport Blvd., Mobile, AL, 36608.  Roberts Dec. ¶ 5.

On March 22, 2018, WHI Roberts called the phone number provided to me by the manager and left a message.  Later that day, Respondent's attorney Greg Yaghmai called her and said that he did not give his permission for her to visit any of Respondent's locations and that Respondent would not produce documents without a subpoena.  Roberts Dec. ¶ 6.

On March 23 2018, WHI Roberts visited the PCS Mobile location at 7325 Theodore Dawes Road, Theodore, AL 36582.  Roberts Dec. ¶ 7.  The employees present told me that the owner worked at 3766 Airport Blvd., Mobile, AL, 36608 and owned multiple PCS Mobile stores.  At that time, WHI Roberts learned that that Respondent owned the Theodore location as well as the Daphne and Chickasaw locations under investigation.  Roberts Dec. ¶7.

That same day, WHI Roberts sent an email to Mr. Yaghmai at his email address greg@yaglaw.net and attached three letters explaining the investigations of the three PCS Mobile locations.  *See* letter attached as Exhibit G.  The letters informed Respondent that an initial conferences in these investigations would be held on March 27, 2018 and March 29, 2018 and listed documents to produce at the initial conference, including documents showing articles of incorporation, documents identifying gross annual dollar volume of sales, documents identifying all individuals who performed work for Respondent with hourly rates and salary and relevant payroll and time records from March 2016 to March 2018.  Roberts Dec. ¶ 8.  On March 29, 2018, Mr. Yaghmai called WHI Roberts and said that his client would not participate in an initial conference and repeated that it would not produce documents without a subpoena.  Roberts Dec. ¶ 9.

On April 5, 2018, WHI Roberts sent a letter to Respondent via email to Mr. Yaghmai.  See Exhibit E.  This letter required Respondent to produce documents necessary for the Wage and Hour investigations of Respondent's locations in to the Wage and Hour Mobile District Office on or before April 12, 2018.  Roberts Dec. ¶ 10.  Specifically, the letter required Respondent to produce documents concerning Respondent's corporate ownership, annual dollar volume of sales, employee contact information, and payroll information. The letter also informed Respondent that the letter was "the final written notice to submit the requested

8

information" and that failure to respond may result in the issuance of a subpoena. Roberts Dec. ¶ 10.

On April 6, 2018, ADD Chambers sent an identical copy of this letter ("April 6 letter") to Respondent via certified mail to Mr. Yaghmai.  *See* April 6 letter attached as Exhibit E.   Chambers Dec. ¶14, Roberts Dec. ¶ 10.

Because of Respondent's failure to appear and to produce the requested records concerning employer coverage under the Act, wages, hours and other terms and conditions of employment, on May 30, 2018, Wayne Kotowski, Regional Administrator of WHD, Region IV, issued a Subpoena to Respondent pursuant to authority granted to WHD by Section 9 of the Act, 29 U.S.C. §§ 209 and 211.  *See* Chambers Dec. ¶14 and Exhibit A.  The Subpoena required Respondent to appear at the WHD office in Mobile, Alabama at 9:00 am on June 7, 2018, and produce all documents listed and described in Attachment #1 to the Subpoena. *See* Exhibit A. The items listed and described in the subpoena include the documents sought in the February 22 letter, the March 9 letter, and the April 6 letter. The requested items in the subpoena are routinely sought by WHD in investigations in order to evaluate Respondent's coverage under and compliance with the Act.  Chambers Dec. ¶15. On May 30, 2018, Wage and Hour Technician Emanual Knowles served the subpoena on Respondent's representative Georgia Blaxon.  See Exhibit A, page 3.

Despite WHD's good faith attempts to secure compliance with the Subpoena, to date Respondent has failed to produce any responsive documents and has actively refused to cooperate with WHD. Because of Respondent's failures to cooperate fully with this investigation and lawfully-issued subpoena, the Secretary has filed the current Petition to secure the Court's assistance in obtaining the documents that the Secretary needs to fulfill his investigatory duty under the Act.

## II.   ARGUMENT

The Subpoena must be enforced because it was issued pursuant to an authorized investigation by WHD seeking reasonably relevant documents that are not indefinite. The United States Supreme Court has held that compliance with administrative subpoenas will be ordered by the court if: (1) the inquiry is within the authority of the agency; (2) the demand for production is not too indefinite; and (3) the information sought is reasonably relevant to the authorized inquiry. *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208 (1946); *Donovan v. Lone Steer*, 464 U.S. 408 (1984) (enforcing an administrative subpoena issued by the WHD that required an employer to appear at the WHD office and bring with it for inspection certain payroll and sales records as it did not violate the Fourth Amendment). The purpose of an administrative subpoena, according to the Supreme Court, is "to discover and procure evidence, not prove a pending charge

or complaint, but to make one, if, in the Administrator's judgment the facts thus discovered should justify doing so. " *Oklahoma Press*, 327 U.S. at 201.

The scope of an administrative subpoena enforcement proceeding is narrow because of the important governmental interest in the expeditious investigation of possible unlawful activity. *Oklahoma Press*, 327 U.S. at 217; *E.E.O.C. v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991); *EEOC v. Children's Hosp.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (*en banc*) (holding that "the scope of the judicial inquiry in an EEOC or any other agency subpoena enforcement proceeding is quite narrow") (overruled on other grounds). The Supreme Court has also held that the Secretary can establish a *prima facie* case solely through a government official's declaration. *United States v. Stuart*, 489 U.S. 353, 360 (1989).

Once the government makes this preliminary showing, the burden shifts to Respondent to prove that enforcement of the Subpoena would be unreasonable. This burden is not easily met where the inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose. As the United States Supreme Court has held, administrative subpoenas enable federal agencies to fulfill their investigative responsibilities; therefore, to invalidate an administrative subpoena is to question the power of Congress to delegate enforcement of federal laws. *Oklahoma Press*, 327 U.S. at 201. Moreover, "the very backbone of an administrative agency's effectiveness in carrying out the congressionally mandated

duties of industry regulation is the rapid exercise of the power to investigate." *Federal Election Comm'n v. Machinists Non-Partisan Political League*, 655 F.2d 380, 385 (D.C. Cir. 1981).

Accordingly, the Court in this case should issue an Order to Show Cause why the Subpoena should not be enforced because the Secretary can establish that he has the authority to conduct the current investigation and to issue the Subpoena, the documents requested are not indefinite, and the information sought is reasonably relevant to the lawful investigation. Respondent has not set forth reasons why the Subpoena is unreasonable.

## A. The Court Should Enforce the Subpoena Because the Secretary Has Established His *Prima Facie* Case.

### 1. *Congress Authorized the Secretary to Conduct Investigations and to Issue Administrative Subpoenas.*

The Wage and Hour Division, an agency of the United States Department of Labor, issued the Subpoena in this case. Congress granted broad authority to the Secretary in Sections 9 and 11(a) of the Act to investigate complaints to ensure employers are conforming with the provisions of the Act. Section 11(a) of the Act authorizes the Secretary or his representatives to "enter and inspect such places and such records" and "investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this Act or which may aid in the enforcement of the provision of

this Act." 29 U.S.C. § 211(a).  This investigatory power includes WHD's Regional Administrator Kotowski's ability to issue the Subpoena to compel the production of documents by Respondent.  Section 9 of the Act confers this power upon the Secretary and his designees relating to any matter under investigation. *See* 29 U.S.C. § 209.  Such subpoenas are enforceable in any district court.[1]

The Subpoena at issue was properly issued under WHD's statutory authority.  WHD has statutory authority to investigate whether Respondent was

---

[1] Section 9 of the Act, 29 U.S.C. § 209, provides:

> For the purposes of any hearing or investigation provided for in this Act, the provisions of section 9 and 10 (relating to the attendance of witnesses and the production of documents) of the Federal Trade Commission Act…are hereby made applicable to the jurisdiction, powers and duties of the Secretary of Labor.

Section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49,  provides in pertinent part that

> …the Commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation.
>
> ***
>
> …[I]n case of disobedience to a subpoena the Commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.
>
> Any of the district courts of the United States…may, in case of contumacy or refusal to obey a subpoena issued to any person, partnership, or corporation issue an order requiring such person, partnership, or corporation to appear before the Commission, or to produce documentary evidence if so ordered…

13

subject to, and in compliance with, the Act, and to issue administrative subpoenas, such as the one issued here, in furtherance of the Act.

      2.    *WHD's Document Requests Were Not Indefinite.*

The Subpoena narrowly defines the subject matter and time frame for the documents requested from Respondent. Items 1 through 14 listed in the Subpoena are clear and concise as to the information requested by WHD. *See* Exhibit A. The documents requested included, but were not limited to: documents sufficient to show ownership of the employer; documents sufficient to identify the legal names of the employer; documents sufficient to show the gross annual dollar volume of sales for the investigatory period (documents crucial to establishing coverage under the FLSA); information regarding employees for the period of December 1, 2016 to present; payroll records; and records of hours worked. *Id*. Further, the time period for which most of these records are sought, December 1, 2016 through and including the date of issuance of the subpoena, encompass the period under investigation. *Id*. The requested documents only seek information to help WHD determine whether Respondent is subject to, and in compliance with the Act. Chambers Dec. ¶ 15. Such documents are routinely requested by WHD in its investigations. *Id*.

      3.    *The Information Sought in the Subpoena is Reasonably Relevant to WHD's Authorized Investigation.*

The scope of the documents requested by the WHD is governed by considerations of relevancy and reasonableness. *Oklahoma Press*, 327 U.S. at 208. A challenge to an administrative subpoena on relevance grounds must demonstrate that there is no reasonable possibility that the category of materials the government seeks will produce information relevant to the general subject of its investigation. *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 301 (1992) (addressing grand-jury subpoenas). This principle has been explained as follows:

> [I]n the pre-complaint stage, an investigative agency is under no obligation to propound a narrowly focused theory of a possible case. Accordingly, the relevance of the agency's subpoena requests may be measured only against the general purposes of its investigation.

*Federal Trade Comm'n v. Texaco*, 555 F.2d 862, 874 (1977).

As mentioned above, the current investigation of Respondent is being conducted to determine Respondent's coverage and compliance with the Act. Courts routinely enforce administrative subpoenas like the one at issue here. *See, e.g.*, *E.E.O.C. v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991) (enforcing the EEOC's administrative subpoena to determine jurisdiction); *Donovan v. Mehlenbacher*, 652 F.2d 228 (2d Cir. 1981) (granting the Secretary of Labor's petition for enforcement noting that the subpoenas for payroll records and access to employees to conduct interviews were reasonable in scope and relevant to the Department's investigation); *Marshall v. Roger Rausch*, 91 Lab. Cas. (CCH) ¶

34,027 (D. Mont. 1981) (enforcing the WHD's administrative subpoena *duces tecum* for payroll records and subpoena *ad testificandum* as being relevant to the inquiry concerning whether Respondent was subject to, and in compliance with, the Act).

The Subpoena in this case seeks documents which reflect the annual dollar volume of sales for Respondent during the investigated period, daily and weekly hours worked by Respondent's current and former employees, straight time and overtime compensation received by Respondent's employees, and corporate information and ownership during the specified investigation period. *See* Exhibit A. Respondent directly controls access to these documents. Moreover, such information must be made, kept and preserved by Respondent pursuant to Section 11(c) of the FLSA and the regulations at 29 C.F.R. Part 516. Review of these documents will allow the Secretary to determine Respondent's coverage under the Act and identify all employees of the enterprise, in addition to revealing any violations of the FLSA.

As the Secretary has made a *prima facie* showing that the WHD has the authority to issue the Subpoena, the Subpoena is not indefinite and the information sought is reasonably relevant to WHD's FLSA investigation, WHD is entitled to the issuance of an Order to Show Cause why the Subpoena should not be enforced. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964).

> **B.   The Court Should Enforce the Subpoenas Because Respondent has not Provided and Cannot Provide Evidence that the Subpoena is Unreasonable.**

Respondent has not provided any evidence that the Subpoena is unreasonable. It is well established that the objecting party generally has the burden to substantiate its objections. *See Schapp v. Executive Indus.*, 130 F.R.D. 384, 386-87 (N.D. Ill. 1990) (detailing respondent's burden to substantiate objections of relevance, broadness, and undue burden); *United States v. Lockheed Martin Corp.*, 995 F. Supp. 1460, 1462 (M.D. Fla. 1998) (limiting subpoena inquiry after respondent demonstrated some documents were protected by attorney-client privilege). The objecting party "must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980).

In this case, Respondent has failed to identify why he is not required to produce the requested documents. The Subpoena is neither indefinite, unreasonable, nor overreaching, but rather, falls within the Secretary's enforcement powers and must be enforced. *See Powell*, 379 U.S. at 57-58; *Oklahoma Press*, 327 U.S. at 217; *Children's Hosp.*, 719 F.2d at 1428.

> **C.   This Court Should Equitably Toll the Statute of Limitations for the Period in Which Respondent Failed to Comply with the**

17

**Subpoena so that Respondent Does not Benefit From its Dilatory Conduct**

This Court has the authority to redress the injury caused by Respondent's failure to comply with the subpoena by equitably "tolling" the statute of limitations. This relief is necessary to ensure that Respondent does not benefit from its dilatory conduct by allowing the statute of limitations to continue running while the Petitioner's ability to bring a timely action has been impeded by Respondent's refusal to comply with a lawful subpoena and an Order of this Court. Courts may equitably "toll" a statute of limitations. Courts may equitably "toll" a statute of limitations "when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1231–1232 (2014). Congress is presumed to incorporate equitable tolling into federal statutes of limitations because equitable tolling is part of the established backdrop of American law. *Id.* at 1232. Limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute. *Young v. United States*, 535 U.S. 43, 49 (2002). Where a party fails to comply with a lawful subpoena, equitable tolling of the statute of limitations is appropriate until the party fully complies with the subpoena. Under the circumstances presented in this action, equitable tolling of the statute of limitations would be appropriate until such

time as Respondent has fully complied with the subpoena. *See Acosta v. Cool King Heating & Cooling, LLC*, No. 1:18-mi-00028-ELR-JKL, at *6-7 [Doc. No. 10] (N.D. Ga. June 7, 2018)*(citing, Hugler v. La Piedad Corp.*, No. 16-9015-MC-W-BP, 2017 WL 5957813, at *2 (W.D. Mo. Mar.29, 2017) (tolling statute of limitations for Department of Labor to bring FLSA action where respondent failed to comply with administrative subpoena); *Hugler v.Guard Servs. Int. Inc.*, Case No. 1:16-mi-36-CAP, at 4, Order dated Mar. 22, 2017 [Doc. No. 30] (N.D. Ga. Mar. 22, 2017) (same); *Perez v. Jasper Contractors, Inc.*, No. 1:16-CV-3845-LMM-JSA, 2016 WL 10998854, at *1 (N.D. Ga. Nov. 22, 2016) (tolling statute of limitations under which OSHA would be required to issue citations due to respondent's failure to comply with administrative subpoena); *E.E.O.C. v. Gladieux Refinery, Inc.*, 631 F. Supp. 927, 936 (N.D. Ind. 1986) ("This court tolls the statute of limitations for the period of time between the issuance of the subpoena until the enforcement, since [respondent] does not have a valid basis for not complying with the subpoena. To find otherwise would allow a defendant to defeat a potentially meritorious action by refusing to comply with a valid subpoena.")).

### III.   CONCLUSION

The Secretary has clearly met his burden of establishing that the Subpoena was issued within WHD's authority and the documents requested are not indefinite

and are reasonably related to a legitimate investigation under Section 9 of the Act, 29 U.S.C. §§ 201, *et seq*. Further, Respondent has failed to assert any reasonable justification for its refusal to comply with the Subpoena. Accordingly, for all the reasons set forth above, the Petition to enforce the Subpoena should be granted. Additionally, the Petitioner moves that the Statute of Limitations be tolled for the period from June 7, 2018, the date Respondent was legally required to produce the documents formally requested by the Wage and Hour Division until the date Respondent fully complies with the Subpoena.

Respectfully submitted,

ADDRESS:

Office of the Solicitor
U. S. Department of Labor
61 Forsyth Street, S.W.
Room 7T10
Atlanta, GA  30303

(678) 237-0613 (Telephone)
(404) 302-5438 (Fax)

ATL.FEDCOURT@dol.gov (Primary)
Murphy.kristin.r@dol.gov (Secondary)

KATE S. O'SCANNLAIN
Solicitor of Labor

STANLEY E. KEEN
Regional Solicitor

ROBERT L. WALTER
Counsel

By: *s/Kristin R. Murphy*
    KRISTIN R. MURPHY
    Trial Attorney

Office of the Solicitor
U. S. Department of Labor
Attorneys for Plaintiff