IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | MISC. ACTION 19-0001-WS-N |
| XCEL COMMUNICATIONS OF SOUTH ALABAMA, INC. d/b/a METRO PCS, | ) ) ) | |
| Respondent. | ) | |

## ORDER

This matter comes before the Court on petitioner's Petition for Enforcement of Administrative Subpoena *Duces Tecum* (doc. 1) and respondent's Motion to Conduct Limited Discovery (doc. 5). Both the Petition and the Motion have been extensively briefed and are now ripe for disposition. Also pending is petitioner's Motion for Leave to Submit Sur-Reply (doc. 14). For cause shown, that Motion is **granted**. Petitioner's proposed Sur-Reply (doc. 15) will be considered in adjudicating the Motion to Conduct Limited Discovery.[1]

**I.     Background.**

The Government initiated this miscellaneous action by filing a Petition for Enforcement of Administrative Subpoena *Duces Tecum*. In that Petition, the Government alleges that the United States Department of Labor, Wage and Hour Division, Region IV (the "WHD")

---

[1] Respondent has requested oral argument with respect to both the Petition for Enforcement of Administrative Subpoena and the Motion to Conduct Limited Discovery. The Local Rules provide as follows: "In its discretion, the Court may rule on any motion without oral argument. Oral argument requests must contain specific reasons why oral argument would be helpful." Civil L.R. 7(h). Upon careful review of the parties' written submissions, including respondent's articulated justification for the request (doc. 4, at 10), the Court concludes that oral argument would not be helpful to resolving the issues joined in these filings; therefore, respondent's requests for oral argument are **denied**.

commenced investigations in February 2018 of five Metro PCS Mobile locations in this judicial district. All five of those Metro PCS Mobile locations are owned and operated by respondent, Xcel Communications of South Alabama, Inc. ("Xcel"). The stated purpose of these investigations is to determine coverage under and compliance with the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* (the "Act" or the "FLSA").

Pursuant to these investigations, WHD representatives contacted Xcel in writing on February 22, 2018, explained the purpose of the investigations, fixed a date and time for an initial conference, and provided a checklist of documents requested. (Jacobs Dec. (doc. 1-2), ¶ 5.) Several days later, Xcel's counsel contacted WHD by telephone and indicated that Xcel would neither produce documents nor allow WHD investigators onto Xcel's premises to conduct employee interviews. (*Id.*, ¶ 7; Chambers Dec. (doc. 1-4), ¶ 7.) Over the course of the next several months, there were numerous written and telephonic communications between WHD officials and Xcel's counsel regarding ongoing WHD investigations of multiple Metro PCS Mobile facilities owned and operated by Xcel. The consistent, recurring pattern of these communications was that WHD requested documents and set dates for initial conferences, but that Xcel neither produced documents nor appeared at those conferences. (Chambers Dec., ¶¶ 9-13; Jacobs Dec., ¶¶ 8-10; Roberts Dec. (doc. 1-3), ¶¶ 5-10.)

In light of Xcel's chronic refusal to appear and produce the requested records, WHD issued a Subpoena *Duces Tecum* (the "Subpoena") to Xcel on May 30, 2018. (Chambers Dec., ¶ 14.) On its face, the Subpoena required Xcel to appear before WHD's Assistant District Director Patricia Chambers on June 7, 2018 at 9:00 a.m., and to produce at that time and place "books, documents and other tangible things, regarding the wages, hours, and other conditions and practices of employment maintained by Xcel Communications of South Alabama dba Metro PCS – as specifically described in Attachment # 1, Items – 1-14 which is made a part of this subpoena." (Doc. 1-5, at 1.)[2] Xcel produced no documents in response to the Subpoena. (Chambers Dec., ¶ 16; Jacobs Dec., ¶ 10.) This enforcement action followed.

---

[2] The referenced Attachment #1 delineated 14 categories of documents that must be produced, to-wit: (i) documents showing Xcel's annual dollar volume of sales for the last three years; (ii) documents identifying all of Xcel's business owners and company officers; (iii) documents identifying all related businesses owned by or affiliated with Xcel's owners; (iv) documents identifying Xcel's legal names, incorporation information and Federal Employer
(Continued)

## II. Motion to Conduct Limited Discovery.

Upon being confronted with WHD's Petition, Xcel theorizes that the Subpoena may have been issued "in bad faith and/or in violation of the DOL's policies and procedures." (Doc. 5, ¶ 11.) In support of this contention, Xcel submits the following facts: (i) these investigations mark the third and fourth times that WHD has investigated Xcel in its five years of existence; (ii) WHD is operating under a directive to investigate cell phone companies; (iii) Ashraf Hijaz, an Xcel officer and shareholder, is of Middle Eastern descent; and (iv) WHD has refused to acknowledge documents that Xcel furnished in prior investigations in prior years. (Doc. 4, at 8.) Based on this showing, Xcel posits that it "should be allowed to engage in minimal discovery to determine whether the DOL has violated its own policies and/or engaged with nefarious intentions." (Doc. 5, ¶ 12.) The specific discovery sought by Xcel includes taking the deposition of Patricia Chambers, Assistant Director of WHD's Mobile Area Office; obtaining WHD's written policies and procedures; and accessing information regarding all WHD audits or investigations of cell phone stores in the greater Mobile area from 2015 to the present. (*Id.*, ¶ 8.) According to respondent, the objectives of such discovery would be to determine whether WHD is unfairly targeting Xcel and whether it has "thrown its policies and procedures into the wind." (*Id.*, ¶ 13.)

It is well-settled that "summons enforcement proceedings are to be summary in nature," and that "courts may ask only whether the [Government] issued a summons in good faith." *United States v. Clarke*, 573 U.S. 248, 254, 134 S.Ct. 2361, 189 L.Ed.2d 330 (2014) (citations and internal quotation marks omitted); *see also Azis v. U.S. I.R.S.*, 522 Fed.Appx. 770, 778 (11th

---

Identification Number; (v) documents identifying Xcel's branch locations and headquarters; (vi) documents identifying all of Xcel's employees for the last two years, including contact information, dates of employment, method of compensation and exemption status; (vii) payroll records reflecting hours worked, compensation paid, and additions to or deductions from wages for the last two years; (viii) documents identifying all workers provided by management companies or labor providers; (ix) documents identifying any franchisees or franchisors; (x) documents identifying the company that processes Xcel's credit card payments; (xi) documents identifying dates of birth for all employees below the age of 18; (xii) documents identifying hours worked by all persons performing work for Xcel for the last two years; (xiii) documents identifying management companies or labor providers who provided workers to perform work for Xcel during the last two years; and (xiv) a copy of Xcel's company handbook. (*Id.* at 2.)

Cir. July 1, 2013) ("Summons enforcement proceedings should be summary in nature, and discovery should be limited.") (citation omitted). The Eleventh Circuit has explained that, in the context of a proceeding to enforce an administrative summons or subpoena, "[d]epositions, interrogatories, and the rest of the panoply of expensive and time-consuming pretrial discovery devices may *not* be resorted to as a matter of course and on a mere allegation of improper purpose." *Nero Trading, LLC v. U.S. Dep't of Treasury, I.R.S.*, 570 F.3d 1244, 1249 (11th Cir. 2009) (citation omitted); *see also Azis*, 522 Fed.Appx. at 778 (same). The appropriate legal test for access to additional information from the Government is that a party seeking to avoid an administrative subpoena "is entitled to examine [a Government] agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith. Naked allegations of improper purpose are not enough: The [respondent] must offer some credible evidence supporting his charge." *Clarke*, 573 U.S. at 254. "That standard will ensure inquiry where the facts and circumstances make inquiry appropriate, without turning every summons dispute into a fishing expedition for official wrongdoing." *Id.* at 254-55.[3]

The critical takeaways from the case law are that (i) Xcel is not entitled to question WHD representatives or obtain their documents based on a naked allegation of improper purpose; but (ii) Xcel may be entitled to do so if it points to specific facts or circumstances plausibly raising an inference of bad faith. In an attempt to satisfy this burden, Xcel identifies what it claims are four specific facts and circumstances plausibly raising an inference of bad faith. First, WHD has investigated Xcel on multiple occasions in a short period of time. Second, the Department of Labor acknowledges a directive to investigate cell phone companies. Third, Hijaz (Xcel's Vice President and a shareholder) is of Middle Eastern descent. Fourth, the DOL has failed to

---

[3] In briefing the Motion to Conduct Limited Discovery, WHD insists that the *Clarke* rule is inapplicable because it concerned evidentiary hearings, not discovery. (*See* doc. 15, at 5 ("the U.S. Supreme Court's decision in *Clarke* did not address the availability of discovery in summary enforcement proceedings"), 6 ("The U.S. Supreme Court in *Clarke* did not address the availability of discovery in summary enforcement proceedings.").) The proffered distinction is not compelling. After all, what Xcel seeks is access to certain information in WHD's possession. Whether it obtains that information via deposition / document production or via evidentiary hearing appears of little consequence. The critical question is whether Xcel is entitled to that information at all, regardless of the delivery method. To resolve that question, the *Clarke* standard is instructive.

acknowledge documents already in its possession from prior investigations. (Doc. 4, at 8; doc. 5, ¶¶ 3-7, 12, 13.)

These facts and circumstances, considered individually and collectively, do not plausibly raise an inference that WHD issued the Subpoena to Xcel in bad faith. As an initial matter, there is nothing nefarious or untoward about WHD undertaking an initiative to ensure FLSA compliance by a certain industry (here, wireless service providers) where WHD has noted a history of noncompliance within that industry. (Chambers Dec. II (doc. 9-1), ¶ 4.) Likewise, the mere fact of multiple investigations of respondent is not indicative of bad faith. *See, e.g., Doe v. United States*, 253 F.3d 256, 272 (6th Cir. 2001) (no evidence of institutional bad faith or harassment where agency served three subpoenas on respondent in two years); *Solis v. PulteGroup, Inc.*, 2013 WL 4482978, *6 (E.D. Mich. Aug. 19, 2013) ("two or even three such investigations does not constitute harassment without some other credible evidence of bad faith or improper purpose"). Besides, the uncontroverted evidence is that only one of the five Metro PCS locations owned by Xcel that is currently under investigation has been investigated previously. (Chambers Dec. II, ¶ 3.) That WHD investigated other Xcel locations at other times does not give rise to a plausible inference of bad faith. Petitioner also shows that Patricia Chambers, the WHD official who selected the 13 investigations in the Mobile area pursuant to the wireless service provider initiative, was unaware that these five Metro PCS locations share common ownership. (*Id.*, ¶ 8.)[4] Similarly, petitioner shows that WHD investigator Monetta Roberts, who was assigned three Xcel locations for investigation, was unaware of the common corporate ownership of those locations when they were assigned to her. (Roberts Dec., ¶ 3.)

---

[4] For its part, Xcel expresses incredulity at Chambers' representation, remarking that the "Department of Labor has access to voluminous records, including public records, which would contradict her Declaration." (Doc. 13, ¶ 2.) This argument misses the point. Chambers does not declare that WHD was unable to ascertain the ownership of the Metro PCS locations that were selected for investigation in February 2018; rather, she simply states that she was unaware of their common ownership at that time. Contrary to Xcel's arguments, there is nothing "patently suspect" about such a statement, nor does it "defy rationale." (Doc. 13, ¶ 5.) Given that WHD was investigating 13 wireless service provider locations in the Mobile area across a variety of brands as part of the wireless service provider initiative, it is far from clear why WHD would have wanted or needed to research these locations' corporate owners before commencing the investigation. There is nothing inherently suspect, implausible or incredible about this aspect of the Chambers Declaration, and certainly nothing about it raises the specter of improper motive or bad faith.

The analysis becomes no cheerier for Xcel with respect to its suggestion that the investigation was motivated by unlawful bias because Xcel Vice President Hijaz is of Middle Eastern descent. Chambers declares that when she selected these locations for investigation, she knew neither that Hijaz was a corporate officer of Xcel nor that Hijaz was of Middle Eastern descent. (Chambers Dec. II, ¶ 9.) Respondent offers neither facts nor evidence to cast doubt or suspicion on the veracity of Chambers' statement in that regard. The Court readily finds that Xcel has identified no facts or circumstances giving rise to a plausible inference that WHD targeted Xcel locations based on the ethnic background of Xcel's Vice President.

Finally, Xcel alleges that it provided "a voluminous number of documents" to WHD in 2015 and 2017 with respect to prior investigations. (Hijaz Dec. (doc. 5-1), ¶¶ 3-4.) Be that as it may, the mere fact that Xcel provided documents to WHD in the past does not call into question the agency's good faith in issuing this Subpoena. There is no specific indication in Xcel's submissions about the degree of overlap in the document requests, just general statements about "duplicitous" [*sic*] requests and a remark that WHD "requested documents in which **some had been produced** in both the 2015 investigation and the 2017 investigation." (*Id.*, ¶¶ 5-6 (emphasis added).) To the contrary, the record unambiguously establishes that this Subpoena covers different Xcel locations (save one) and a different time period than the prior investigations; therefore, it stands to reason that the bulk of the documents requested would be different as well. Why would it be improper for WHD to confirm that FLSA coverage facts existing in previous years for other locations were valid today for these locations? It would not. Besides, Xcel has made no showing and expressed no willingness to produce any non-overlapping documents in response to the Subpoena. In short, a respondent's mere cooperation with a prior agency investigation does not support a plausible inference of bad faith or harassment when the agency subsequently issues a Subpoena covering mostly different locations and a different time period.

For all of the foregoing reasons, the undersigned concludes that Xcel has failed to meet its burden of pointing to specific facts or circumstances plausibly raising an inference of bad faith, and coming forward with credible evidence supporting its charge that WHD's issuance of the Subpoena is motivated by discriminatory animus, vindictiveness or a spiteful desire to harass Xcel. Because the discovery sought by Xcel essentially amounts to a fishing expedition for official wrongdoing, bolstered by little more than naked allegations of improper purpose, Respondent's Motion to Conduct Limited Discovery (doc. 5) is **denied**.

**III.    Petition for Enforcement of Subpoena.**

"A district court's role in a proceeding to enforce an administrative subpoena is limited." *U.S. E.E.O.C. v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996); *see also E.E.O.C. v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991) ("It is well-settled that the role of a district court in a proceeding to enforce an administrative subpoena is sharply limited; inquiry is appropriate only into whether the evidence sought is material and relevant to a lawful purpose of the agency."). To enforce an administrative subpoena, the Government must establish a *prima facie* case by demonstrating the so-called *Powell* factors, to-wit: that "(1) the investigation has a legitimate purpose, (2) the information summoned is relevant to that purpose, (3) the [WHD] does not already possess the documents sought, and (4) the [WHD] has followed the procedural steps required by [law]." *Presley v. United States*, 895 F.3d 1284, 1289 (11th Cir. 2018) (citation omitted). If the Government satisfies these four criteria, the burden shifts to the party resisting the subpoena to disprove one or more of those requirements, "or to demonstrate that judicial enforcement should be denied on the ground that it would be an abuse of the court's process." *Id.* (citations and internal quotation marks omitted). The respondent bears a heavy burden to show an improper purpose.[5]

Upon careful review of the parties' filings, the Court concludes that WHD has demonstrated a *prima facie* case for enforcement of the Subpoena. The legitimacy of the investigation's purpose is shown by Assistant District Director Chambers' declarations that (i) WHD noted a history of FLSA noncompliance among wireless service providers in the Southeast; (ii) based on that observation, WHD's Atlanta Regional Office undertook an initiative to ensure FLSA compliance among wireless service providers in that region; (iii) pursuant to that initiative, WHD launched 32 investigations throughout Alabama, including 13 in the Mobile area; and (iv) of those 13 Mobile investigations (including five Xcel locations), Chambers selected locations based on a variety of brand names, without regard for corporate ownership. (Chambers Dec. II, ¶¶ 4-7.) These facts certainly show a legitimate purpose. Similarly, there

---

[5]    *See, e.g., United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 817 (8th Cir. 2012) ("The respondent bears a heavy burden to disprove the existence of a valid purpose for an administrative subpoena."); *Doe*, 253 F.3d at 272 (affirming decision enforcing administrative subpoena where respondent had failed to meet "heavy" burden of "showing institutional bad faith," that DOJ had been motivated by improper purpose).

can be no reasonable dispute that the information sought is relevant to that stated purpose. Xcel readily acknowledges that "[i]t is a franchisee of Metro PCS cell phones." (Hijaz Dec., ¶ 1.) The five Xcel locations covered by the Subpoena are wireless service provider establishments located in the Southeast for which WHD seeks to ascertain FLSA compliance; therefore, they fit neatly within the aforementioned WHD initiative.

WHD has also satisfied the third *Powell* factor, which is that it does not already possess the documents sought. In this regard, the Government shows that only one of the Xcel locations covered by the Subpoena has been investigated previously, and that investigation covered a different time frame.[6] Insofar as respondent may have already provided documents responsive to certain itemized document requests identified in the Subpoena, Xcel will not be required to produce those same documents to WHD a second time, so long as it stipulates that the information therein is identical for these five locations for the covered time period.[7]

The fourth *Powell* factor requires WHD to show that it has followed the procedural steps required by law. It has done so. On its face, the FLSA expressly authorizes the Department of Labor and its representatives to "investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this chapter, and [to] enter and inspect such places and such records …, question such employees, and investigate such facts, conditions, practices or matters as [it] may deem necessary or appropriate to determine whether any person has violated any provision of this chapter." 29 U.S.C. § 211(a). The FLSA likewise grants the Department of Labor authority to issue subpoenas of the sort at issue here. *See* 29 U.S.C. § 209 (making applicable to Secretary of Labor statutory provisions authorizing Federal Trade Commission to compel via subpoena production of documentary evidence relating

---

[6] In particular, the one Xcel location within the Subpoena's scope that WHD investigated previously is found at 28825 U.S. Highway 98, Daphne, Alabama (the "Daphne Location"). (Chambers Decl. II, ¶ 3.) The Daphne Location was previously investigated for the period of May 1, 2015 through November 16, 2016. (*Id.*, ¶ 2.c.) By contrast, the Subpoena calls for documents covering the period of December 1, 2016 through the present. These documents might be the same, but they might not, and WHD is entitled to confirm that fact.

[7] Central to Xcel's objection to the reasonableness of the scope of the Subpoena is its contention that "documents are sought for **all** fifteen Xcel locations." (Doc. 4, at 5.) This statement is incorrect. Petitioner's filings leave no doubt that it is investigating only the five specified Xcel locations, and that the Subpoena applies solely to those enumerated locations.

to any matter under investigation); *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 214, 66 S.Ct. 494, 90 L.Ed.2d 614 (1946) ("Congress has authorized the [WHD] … to determine the question of coverage in the preliminary investigation of possibly existing violations; in doing so to exercise his subpoena power for securing evidence upon that question, by seeking the production of petitioners' relevant books, records and papers; and, in case of refusal to obey his subpoena, issued according to the statute's authorization, to have the aid of the District Court in enforcing it."). There appear to be no procedural defects in WHD's issuance of the Subpoena.

Petitioner having made a *prima facie* showing as to all four *Powell* factors, the burden shifts to Xcel either to disprove one of those factors or to establish that enforcement of the Subpoena would amount to abuse of the court's process (*i.e.*, an improper purpose). In an effort to shoulder this burden, Xcel challenges the Subpoena on three grounds. First, it argues that the Subpoena is unreasonable because WHD is targeting one industry, WHD may harbor animosity towards Xcel for prevailing in earlier administrative proceedings, and Hijaz is of Middle Eastern descent. None of these considerations, individually or collectively, reasonably call into question the reasonableness of the Subpoena. The Court discerns no impropriety in WHD's decision to launch an initiative focused on wireless service providers in the Southeast. Respondent offers only naked speculation that WHD has an axe to grind against it based on the outcome of prior administrative proceedings. And Hijaz's Middle Eastern heritage appears entirely irrelevant, given Chambers' declaration that she knew neither Hijaz's ethnicity nor his status as an Xcel corporate officer when she selected the Xcel locations for investigation. In short, respondent has failed to make any showing that the Subpoena is unreasonable.[8]

Next, Xcel protests that it has provided information responsive to 8 of the 14 document requests set forth in the Subpoena in previous WHD investigations. Those requests include matters like the corporate officers' names, Xcel's legal identity, branch locations, confirmation

---

[8] Respondent also asserts that the Subpoena is unreasonable as to item #10, which requests documents identifying the company that processes Xcel's credit card payments. According to Xcel, this request is unreasonable because its only legitimate purpose would be to establish FLSA coverage, to which Xcel has agreed since 2015. (Doc. 4, at 6.) But respondent makes no showing that it has stipulated to FLSA coverage for purposes of this investigation, or for the specific time period and Xcel locations covered by this investigation. Besides, it is extraordinarily difficult to imagine any burden accruing to Xcel by virtue of item #10, given how straightforward it would be for respondent simply to identify its credit card processor.

that no independent contractors work for Xcel, identification of the franchisee, confirmation that no one below the age of 18 works for Xcel, and confirmation that no handbook exists. In the first place, such information related to different time periods and (mostly) different locations. There is nothing untoward, improper or unreasonable about WHD seeking confirmation that the information provided by Xcel previously holds true for the five locations under investigation for the specific time period at issue. At any rate, none of this information appears remotely burdensome for Xcel to furnish.

Finally, Xcel maintains that the Subpoena was issued in bad faith because WHD has investigated Xcel previously, WHD is targeting cell phone companies, Hijaz is of Middle Eastern descent, and WHD is not acknowledging responsive documents already in its possession. These issues, individually and collectively, have been addressed *supra*, and no purpose would be served by reiterating that discussion here. Suffice it to say that respondent's evidence on none of these issues raises a plausible inference of bad faith or suggests that the Subpoena should not be enforced.

For all of these reasons, the Court concludes that the Subpoena is proper and that WHD is entitled to enforcement of same pursuant to the *Powell* factors, particularly in light of Xcel's failure to make any showing that the Subpoena is overly burdensome, unreasonable, overreaching or the product of bad faith.

One last issue that must be addressed is petitioner's request that the statute of limitations be equitably tolled for the time period during which respondent refused to comply with the Subpoena. Federal courts routinely grant such relief to cover the period during which a respondent fails to comply with a lawful subpoena. *See, e.g., E.E.O.C. v. Gladieux Refinery, Inc.*, 631 F. Supp. 927, 936 (N.D. Ind. 1986) ("This court tolls the statute of limitations for the period of time between the issuance of the subpoena until the enforcement, since Gladieux does not have a valid basis for not complying with the subpoena. To find otherwise would allow a defendant to defeat a potentially meritorious action by refusing to comply with a valid subpoena."); *Acosta v. Quality Construction, Inc.*, 2018 WL 7514591, *3 (D. Colo. Dec. 21, 2018) ("The Court finds that under these circumstances equitable tolling of the statute of limitations is appropriate until Respondent has fully complied with the subpoena. To reach any other conclusion would allow Quality Construction to defeat a potentially meritorious action by refusing to comply with a valid subpoena."); *Acosta v. Cool King Heating & Cooling, L.L.C.*,

2018 WL 4500285, *2 (N.D. Ga. June 7, 2018) ("Petitioner maintains that Respondent may attempt to avoid, or at least limit, its liability under the FLSA by delaying its response to the subpoena and the Court's Order requiring compliance. Under the circumstances presented in this action, equitable tolling of the statute of limitations would be appropriate until such time as Respondent has fully complied with the subpoena."); *United States v. DTV Install, LLC*, 2017 WL 631552, *2 (M.D. Fla. Jan. 31, 2017) (where respondent improperly refused to comply with WHD subpoena, opining that statute of limitations should be tolled between the date on which the documents were due and the date on which they are finally produced). This Court will do the same, over Xcel's objections, for the reasons articulated in the foregoing authorities. Accordingly, this Order tolls the statute of limitations for the period from June 7, 2018 (the date on which Xcel was legally required to produce documents responsive to the Subpoena) until the date on which respondent fully complies with the Subpoena.

**IV.   Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Petitioner's Motion for Leave to Submit Sur-Reply (doc. 14) is **granted**, and the proposed Sur-Reply (doc. 15) is properly considered in adjudicating this matter;
2. Respondent's Motion to Conduct Limited Discovery (doc. 5) is **denied**;
3. The Petition for Enforcement of Administrative Subpoena *Duces Tecum* (doc. 1) is **granted**;
4. Respondent is **ordered** to appear, at a time and place to be agreed upon by the parties, before a duly-appointed official of the United States Department of Labor, and to produce at that time all items and documents listed in the Subpoena originally served on Xcel on or about May 30, 2018;
5. The statute of limitations is tolled for the period running from June 7, 2018 until the date respondent fully complies with the Subpoena; and
6. Upon respondent's compliance with the Subpoena, petitioner is **ordered** to file a notice to that effect so that this matter may be closed for administrative and statistical purposes.

DONE and ORDERED this 26th day of March, 2019.

                                            s/ WILLIAM H. STEELE
                                            UNITED STATES DISTRICT JUDGE